# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

---

**In Re:**

EDWARD SCHWEIZER and
CYNTHIA BENNETT,

       **Debtors.**

**Bankruptcy Case
No. 05-03081**

---

## MEMORANDUM OF DECISION
---

**Appearances:**

> T.J. Angstman, Angstman Law, Boise, Idaho, Attorney for Debtors.

> Roger Hales, Naylor & Hales, Boise, Idaho, Attorney for Creditor Blackhawk.

> Bernie Rakozy, Boise, Idaho, Chapter 13 Trustee.

> Chapter 13 Debtors Edward Schweizer and Cynthia Bennett,

husband and wife, seek confirmation of their proposed Chapter 13 plan.  Creditor

Black Hawke Construction Lending, LLC, objects to confirmation of the plan and

asks the Court for stay relief to foreclose its mortgage on Debtors' house because

the plan does not treat its claim as secured.  Debtors contend they effectively

MEMORANDUM OF DECISION - 1

rescinded the loan made to them by Creditor pursuant to the Truth in Lending Act,

rendering any debt they owe Creditor unsecured.  Creditor disagrees.

The Court conducted an evidentiary hearing concerning these

matters on November 9, 2005, and continuing on January 5, 2006, at which the

parties appeared, several witnesses testified, and documentary evidence was

produced.  The parties have also filed briefs in support of their respective

positions.  After reviewing the evidence, testimony, and the parties' arguments,

the issues are now ripe for disposition.  The following Memorandum constitutes

the Court's findings, conclusions and disposition.  Fed. R. Bankr. P. 7052; 9014.

### Findings of Fact[1]

### A. The Loan Transaction.

On April 27, 2004, Debtors closed on a loan in the amount of

$234,500 from Creditor Black Hawke Construction Lending.  Ex. E.  Debtors

were contractually obligated to move a dwelling built in 1906 from Boise's

historic North End and intended to place the home on real property Debtors owned

in Eagle, Idaho.  Once situated on the property, Debtors planned to make

extensive changes to the dwelling, including substantial additions.  Debtors hoped

---

[1]  These findings include both disputed and undisputed facts.  In deciding
disputed issues of fact, the Court carefully considered the testimony of the witnesses, and
based upon its opportunity to observe them testify, assessed their credibility.  The Court's
findings reflect its judgment on the weight to be given to that testimony.

MEMORANDUM OF DECISION - 2

to perform this work themselves, hiring professionals only when necessary.

Debtors intended to use the loan proceeds to accomplish these goals.

In more detail, the Court will describe the events which transpired.

**1.      Debtors enter an agreement for the North End Dwelling
requiring financing to remove the dwelling and acquire
title.**

On September 12, 2003, Debtors entered into a "Dwelling Removal

Agreement" with First United Methodist Church of Boise City.  Ex. 1.  The

agreement provided in part that "Church shall covey title to the Dwelling to Mover

for the purchase price of One and No/100s Dollars ($1.00)."  Dwelling Removal

Agreement at 2, Ex. 1.  To ensure that the Dwelling was removed from the

property, the Church required Debtors to provide a $5,000 deposit that would be

refunded when the building was removed, plus an additional $2,500 as

reimbursement for relocating the dwelling.  Dwelling Removal Agreement at 1–2,

Ex. 1.  Debtors provided the cash deposits from their own resources.  The

agreement further specified that title to the dwelling would not pass from the

Church to Debtors until the removal of the dwelling commenced.  Dwelling

Removal Agreement at 5, Ex. 1.

Moving the dwelling became a fairly expensive and complex

project, and necessitated coordination with the power company to deal with power

MEMORANDUM OF DECISION - 3

lines along the moving route.  As a result, the single dollar Debtors paid under the

Agreement did not actually allow them to acquire title to the dwelling because

Debtors were also obligated to commence and pay all the removal and relocation

expenses.  To do this, Debtors needed financing.

> **2.      Debtors secure financing, but do not receive the required
>          Truth in Lending Act disclosures.**

Debtors initially encountered difficulties in securing the required

financing.  However, working in concert with a mortgage broker, Custom

Mortgage, a willing lender was found: Creditor Black Hawke Construction

Lending, LLC.  According to Custom Mortgage, the broker attempted to find

other lenders, but Creditor was the only construction lender willing to make the

loan.

Though mandated by law, Creditor did not give Debtors, and they

did not receive, the required Truth in Lending Act disclosures that would have

disclosed to them the various and extensive fees associated with the loan Custom

Mortgage had secured for them.  Therefore, until the loan closing occurred,

Debtors were not fully aware of the costs for this loan.

From the evidence, it appears that Creditor maintained signed copies

of all required paperwork concerning this loan in its file except for the Good Faith

Estimate and the Truth in Lending Disclosure Statement.  Ms. Hawkes, Creditor's

MEMORANDUM OF DECISION - 4

principal,  testified that she made a note on both of these documents "picked up by

borrower 11/19/03," but that the note was written before Debtors picked up the

documents.  Exs. B, C.  Debtors testified they did not see these documents, nor did

they ever pick them up from Creditor.  Both documents contain spaces for Debtors

to acknowledge they received a copy of the disclosures; neither document is

signed or initialed.

Ms. Bennett testified that any documents she picked up from

Creditor she took home, signed and returned to Custom Mortgage.  She also

testified she does not have a copy of the disclosure documents in her loan records,

although she has copies of all other documents prepared in connection with this

loan.  And as noted above, Creditor also does not have a signed copy of the

disclosures.  While it is disputed by Creditor, based on the Court's review of the

evidence, the Court finds Debtors did not receive these documents.

For whatever reasons, this was an extremely expensive loan

transaction.  Ms. Bennett testified that had she been aware of the extensive costs

and fees associated with the loan, she would have pursued a loan from another

mortgage broker, United Mortgage, or would have abandoned the house project all

together.  Ms. Bennett testified that the reason Debtors had been unable to secure a

loan from United Mortgage was because they did not have time to have an

MEMORANDUM OF DECISION - 5

appraisal done on the Eagle Property before the North End Dwelling had to be moved.  The Church had already granted numerous extensions to Debtors and was unwilling to grant any further extensions.  It does not appear any final determination had been made by United Mortgage that Debtors could have received a loan.  But because Debtors needed the loan to move the North End Dwelling, and they were under considerable pressure from the Church to do so, they closed on the loan with Creditor in spite of the high costs involved.

It was not disclosed to Debtors by Creditor or Custom Mortgage that the lender and broker were affiliated, in that both entities were owned by the same person, Sarah Hawkes.  Ms. Hawkes employs several people at Custom Mortgage, but she is the only employee of Creditor.  Ms. Hawkes testified that she ordinarily does not disclose to customers that she owns both Custom Mortgage and Creditor when Creditor is funding a loan.  She apparently does not believe this information to be relevant to her customers' decisions concerning loans.  The Court notes the failure to disclose this relationship because Debtors were required to pay separate "origination fees" totaling $11,277.50 to the related entities.

John Hawkins also testified.  He works for KM Construction Lending, the "underwriter" of Debtors' loan.  The underwriter reviewed the proposed loan transaction and rendered an opinion to Creditor as to whether the

MEMORANDUM OF DECISION - 6

loan should be made.  Mr. Hawkins' opinion was that Creditor should not make

the loan.  The risks Hawkins identified were Debtors' credit  rating, and that

Debtors were undertaking a complex project without professional help.  However,

Creditor insisted on going forward because, although Debtors were considered a

higher risk loan, that risk was tempered by the higher fees and interest rate

Creditor intended to charge Debtors.  In part based upon the underwriter's

recommendation, the terms of the loan provided for a variable interest rate of the

Index Rate plus 8%.  As well as higher origination fees paid to all the parties

involved in the loan, Custom Mortgage, Creditor, and Debtors were required to

pay a fee for KM Construction's services in advising the lender.  Debtors were

also required to pay a fee to HR Financial Service, a company that would act as

"loan servicer" in this case.  Ms. Hawkes could not explain why Creditor required

another company to collect payments under the loan.

When all fees payed by Debtors to the various entities involved in

making the original loan and in connection with two modifications to the due date

for the loan required because of construction delays are considered together,

Debtors were charged over $22,488.25 in fees.  Indeed, of the $291,965.66

Creditor asserts is now due on Debtors' loan, only $218,007.87 was disbursed to

fund Debtors' project.  The remaining $73,948.79 consists of the fees, interest and

MEMORANDUM OF DECISION - 7

late payment fees.  Ex. OO.

### 3.    Debtors encounter construction delays requiring modification of the loan.

While the loan closed and Debtors obtained the financing needed to move forward with the house relocation, Debtors' project completion was delayed four months because Debtors learned "after the fact" that the property on which the house was to be placed was located in a flood plain.  This came as a surprise to Debtors because the loan documents Debtors signed had indicated flood insurance was not required on their project, and that an inspector had determined the property was not subject to any special flood hazards.  Ex. C.[2]  Ms. Bennett testified that because their property was located in a flood plain, prior to placing the dwelling on the Eagle Property, Debtors had to apply to authorities to have the property administratively removed from the flood plain.  This process occasioned delays, and as a result, the loan due date was first modified to January 10, 2005, and then when construction was still not complete at that time, to March 10, 2005.  *See* Exs. H, J.  As a result additional fees were charged to Debtors by the lender in connection with the modifications, and the principal balance of the loan rose to $251,250.

---

[2]    Mr. Hawkins, who was retained by the lender to verify the flood status of the property for purposes of the loan, testified he charged Debtors $20.00 to make this erroneous determination.

MEMORANDUM OF DECISION - 8

**4. Debtors attempt to rescind the loan.**

Construction was not completed by the March 10, 2005 loan due date.   Because the house was unfinished, Debtors were unable to obtain an "end-loan" to pay off Creditor's loan.  Unwilling to extend the loan further, on April 1, 2005, Creditor recorded a "Notice of Default and Election to Sell Under Deed of Trust" with the county, and scheduled Debtors' property for sale on August 11, 2005.  Exs. S, T.

On July 19, 2005, Debtors sent a letter to Creditor informing Creditor that they were rescinding the loan because they had not been given notice of their right to rescind prior to entering the loan, and because Creditor failed to inform Debtors that their property was located in a flood plain.  Ex. L.  From the record, it appears Creditor ignored the letter rescinding the loan, believing it was immune from rescission.

**B.  The Value of Debtors' Property.**

Depending upon who is asked, construction on Debtors' home is anywhere from 50% to 75% complete.  It is undisputed that Debtors, while living in the structure, do not have the required certificate of occupancy.

Debtors presented the testimony of Jim Powell, a local real estate agent, who valued the property and home, if completed, at $934,528.  Ex. 10.  Mr.

MEMORANDUM OF DECISION - 9

Powell testified the structure is approximately 75% complete and he places its value in "as is" condition at $800,896.  Ex. 10.

Creditor presented the testimony of Jack Van Wyk, a state certified residential real estate appraiser.  Mr. Van Wyk determined that the value of the property in its current state of completion is $300,000.  In rendering his opinion, Mr. Van Wyk took into account that the home is not completed, that the property is located near both Firebird Raceway and Chapparal Raceway, and borders State Highway 16, the main route between Boise and Emmett, a road scheduled to be widened in the near future to five lanes.  Additionally, the property has no landscaping, a gravel driveway and no garage or out-buildings.  The house sits on 12.79 acres and will be quite large when finished.

As a certified residential real estate appraiser, Mr. Van Wyk was a very credible witness with impressive credentials and a strong command of the facts.  He has considerable training and experience in rendering value opinions.  In contrast, Mr. Powell renders value opinions only in connection with setting potential listing prices for customers, and he is not a licensed appraiser nor has he received any specialized training in appraisal practices.  The Court assigns great weight to Mr. Van Wyk's testimony and opinions, and little weight to that of the salesperson, Mr. Powell.

MEMORANDUM OF DECISION - 10

All things considered, including the Court's own impressions of the condition of the house and property after reviewing the photographs the parties submitted, the Court is confident that the property is worth not more than Mr. Van Wyk's appraised value of $300,000.[3]

### C.  Debtors' Bankruptcy and the Parties' Arguments.

Debtors filed for Chapter 13 relief on August 10, 2005, the day before the foreclosure sale.  Docket No. 1.  They filed their proposed Chapter 13 plan on August 16, 2005, which treats Creditor's claim as unsecured.  Docket No. 12.  Creditor filed a proof of claim on August 30, 2005, Claim No. 5, and amended that claim on December 2, 2005, Claim No. 18.  On September 8, 2005, Creditor objected to confirmation of Debtors' proposed plan primarily because of its treatment of Creditor's claim as an unsecured debt.  Docket No. 19.  Creditor then filed its motion for relief from stay on September 13, 2005.  Docket No. 25. In turn, Debtors objected to allowance of Creditor's claim on September 27, 2005. Docket No. 33.

Creditor's amended proof of claim asserts a balance due from

---

[3]  While they take a different position now, Debtors' schedules list the value of the home and real property to be $335,000.  Schedules A, C, D, Docket No. 1.  Under Fed. R. Evid. 201(c) and Fed. R. Evid. 801, the Court takes judicial notice of the contents of its file, and considers the statements made in Debtors' schedules as admissions.  *In re Moore*, 01.4 I.B.C.R. 147, 149 n.7 (Bankr. D. Idaho 2001) (treating schedules as admissions).

MEMORANDUM OF DECISION - 11

Debtors of $291,965.66.  Claim No. 18.  Creditor maintains it provided all required Truth in Lending Act disclosures to Debtors.  Creditor contends the loan at issue was a residential mortgage transaction, and is therefore exempt from the right of rescission found in the Truth in Lending Act, 15 U.S.C. § 1635.  Because the right of rescission is inapplicable to Debtors' loan, Creditor argues Debtors' rescission was ineffective, and as a result, Creditor's loan is secured by a deed of trust on Debtors' house and property and entitled to treatment as such under Debtors' plan.  Creditor therefore asks the Court to deny confirmation of Debtors' plan.  Creditor also requests that the Court grant it relief from the automatic stay to foreclose on the property.

Debtors contend their loan transaction with Creditor was a home improvement loan, and that Creditor violated the Truth in Lending Act by failing to provide Debtors with the required disclosures, including notifying Debtors of their right of rescission.  Debtors argue that because they rescinded the loan, Creditor's deed of trust is void, and Creditor's claim is unsecured.  Debtors demand damages for Creditor's violation of the law, and ask that those amounts be offset against amounts owed to Creditor, if any.  Debtors also contend they are entitled to an offset or recoupment pursuant to the National Flood Insurance Program based upon Creditor's inaccurate flood plain determination.

MEMORANDUM OF DECISION - 12

Additionally, Debtors contend their home, even in its unfinished condition, is worth in excess of $600,000, and is necessary for their effective reorganization under Chapter 13. Therefore, Debtors contend that even if Creditor's claim is secured by the house, the automatic stay should not be lifted. Debtors also seek confirmation of their Chapter 13 plan.

## Disposition

### A.  Status of Creditor's Claim.

A timely filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). A proof of claim filed in accordance with the Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). If an objection to the claim is made, the court is directed to determine the amount of the claim as of the date the petition was filed, and "shall allow such claim . . . except to the extent that — (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" 11 U.S.C. § 502(b)(1). Debtors, as objectors in this case, have the burden of presenting evidence sufficient to overcome the *prima facie* validity of Creditor's claim. *In re Pugh*, 157 B.R. 898, 901 (9th Cir. BAP 1993). If they succeed, Creditor bears the ultimate burden of persuasion that the

MEMORANDUM OF DECISION - 13

claim should be allowed.  *Id.*  The applicable law in this instance is the federal

Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

> **1.   Creditor holds an allowed secured claim because the right
> of rescission was not applicable to this residential
> mortgage transaction.**

The Truth in Lending Act defines a residential mortgage transaction

as "a transaction in which a mortgage, deed of trust, . . . or equivalent consensual

security interest is created or retained against the consumer's dwelling to finance

the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(w).

The right of rescission does not apply to residential mortgage transactions.  15

U.S.C. § 1635(e)(1).  "It is clear that the Congress did not intend the rescission

obligation (or disclosure of it) to extend to a loan whose predominant purpose is to

enable the borrower to acquire or erect, on her property, a new residential

structure."  *Heuer v. Forest Hill State Bank*, 728 F.Supp. 1199, 1200–01 (D. Md.

1989).

The facts do not support Debtors' attempt to cast this loan as a home

improvement loan, or refinance, instead of a loan used to acquire a dwelling.

While Debtors owned the land, Debtors did not own the North End Dwelling

before purchasing it from the church.  And Debtors acknowledge they could not

acquire the North End Dwelling until they obtained the loan.  While Debtors argue

MEMORANDUM OF DECISION - 14

they purchased the home for one dollar and owned the dwelling prior to obtaining

the loan from Creditor, again the true cost to Debtors to acquire the house must

include the expenses of moving that home to a new location.  A review of the

Purchase Agreement, Ex. 1, discloses that Debtors could not acquire title to the

dwelling until they commenced the removal of the dwelling from its then location.

This condition required Debtors to obtain a loan.  Had Debtors not obtained a loan

to enable them to remove the dwelling, the Church would have bulldozed the

dwelling, and Debtors would have forfeited their deposits.

Under these facts, the Court concludes the loan from Creditor was a

residential mortgage transaction in that Debtors used the funds to acquire their

primary residence.   As Debtors concede in their closing brief, if the Court

concludes, as it has, that the loan is a residential mortgage transaction, the right of

rescission is inapplicable.  15 U.S.C. § 1635(e)(1).  Therefore, Debtors' attempt to

rescind the loan was ineffective, as they lacked any statutory basis to do so.  As a

result, Creditor holds an allowed secured claim in this bankruptcy case.

**2.      Creditor failed to give Debtors the disclosures required
under the Truth in Lending Act.**

While the right to rescind the loan is inapplicable in this case,

Debtors had other important rights under the law.  The stated purpose of the Truth

MEMORANDUM OF DECISION - 15

in Lending Act is to provide for the informed use of credit by consumers.  15

U.S.C. § 1601(a).  To facilitate such informed decisions, the Act requires

"meaningful disclosure of credit terms so that the consumer will be able to

compare more readily the various credit terms available to him and avoid the

uninformed use of credit."  15 U.S.C. § 1601(a).[4]  In order to effectuate its

purpose, the Act requires the disclosures be made "before the credit is extended."

15 U.S.C. § 1638(b)(1).  As this is a residential mortgage transaction, Creditor had

no more than three business days after receiving Debtors' written application to

give them a good faith estimate of the required disclosures.  15 U.S.C. §

1638(b)(2).

This is not a case where the Court is asked to determine if the

disclosures received conform with the statute, or if the disclosures were timely

given, but the unusual case where the parties dispute whether Creditor provided

the required disclosures to the borrowers prior to closing at all.  As discussed

above, while the issue is disputed, the evidence in this case persuades the Court to

find that Creditor simply failed to give the required disclosures to Debtors prior to

---

[4] The list of items of important information required to be disclosed for
"consumer transaction[s] other than under an open end credit plan" is set forth in 15
U.S.C. § 1638 and includes, among other things, the identity of the creditor;  the "amount
financed";  the "finance charge";  the "annual percentage rate";  the sum of the amount
financed and the finance charge; and the number, amount, and due dates of payments.

MEMORANDUM OF DECISION - 16

closing.  As a result, the Court concludes Creditor violated the statute.

Debtors argue they are entitled to recover damages for Creditor's failure to provide the required disclosures.[5]  The statute provides civil damages may be assessed against a lender for non-compliance with the statutory requirements:

> [A]ny creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person in an amount equal to the sum of —
>
> (1) any actual damage sustained by such person as a result of the failure;
>
> (2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, . . . or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000.

15 U.S.C. § 1640(a).   "[I]n order to receive actual damages for a TILA violation . . . a borrower must establish detrimental reliance."  *Smith v. Gold*

---

[5]  Arguably, Debtors' claim for damages should be prosecuted by way of an adversary proceeding.  Fed. R. Bankr. P. 7001(1); *see In re Moses*, 9 B.R. 370 (N.D. Ga. 1981) (holding that a claim for damages under the Truth in Lending Act required an adversary proceeding).  However, Creditor did not object  to the procedural posture of this case, and the Court concludes neither the factual record nor the presentation of argument would have been materially different if an adversary proceeding had been conducted.  Therefore, the Court, in the exercise of its discretion, will reach the merits of the issue.  *See In re Munoz*, 287 B.R. 546, 551 (9th Cir. BAP 2002).

MEMORANDUM OF DECISION - 17

*Country Lenders* (*In re Smith*), 289 F.3d 1155, 1157 (9th Cir. 2002).

Additionally, Creditor is liable "in the case of any successful action to enforce the

foregoing liability . . . [for] the costs of the action, together with a reasonable

attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(4).

Based upon its review of the evidence, the Court concludes Debtors

are not entitled to actual damages because they failed to prove those damages, or

to show any detrimental reliance on the lack of disclosures. While Creditor was

statutorily required to provide the Truth in Lending Act disclosures, Debtors did

not establish they ever sought or relied upon any disclosures regarding the cost of

the loan transaction.

Additionally, Debtors were not actually damaged by Creditor's

failure to provide information regarding the interest rate on this loan. Debtors

argue their actual damages are equal to the amount of interest charged because,

had Debtors known about the cost of the loan they would have obtained a loan at a

lower interest rate of 10% from United Mortgage. However, this argument itself

presumes Debtors were well aware of their interest rate regardless of the lack of

formal disclosure. Additionally, Debtors failed to offer any evidence, other than

the testimony of Ms. Bennett, that a loan with lower costs and a lower interest rate

was available. Instead, the evidence established that Debtors were rushing to close

MEMORANDUM OF DECISION - 18

this loan so they would have the funds to acquire the North End Dwelling, instead of losing the right to remove the dwelling and forfeiting their deposit.  Debtors did not show they suffered actual damages based on Creditor's failure to provide the interest rate in the form of a Truth in Lending Act disclosure.

Debtors also argue they are entitled to actual damages based upon Creditor's failure to disclose its identity pursuant to 15 U.S.C. § 1638(a)(1). However, even if the identity of the lender had been disclosed, it does not follow that the relationship between the lender and broker would also have been disclosed.  In fact, Ms. Hawkes testified she does not disclose the affiliation between her brokerage business and lender business to clients.  While such conduct appears suspicious, Debtors did not direct the Court to any provision of the Truth in Lending Act aimed at preventing it.  As stated above, one purpose of the Truth in Lending Act is to require lenders to disclose the cost of credit.  The Act does not regulate the relationship between brokers and lenders to prevent brokers from referring loans to related entities as occurred here.

However, Debtors are entitled to recover statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(A) for Creditor's failure to provide the Truth in Lending Act disclosures.   Statutory damages for violations are twice the finance charge, but not more than $2,000.  15 U.S.C. § 1640(a)(2)(A)(iii);  *See also Koons Buick*

MEMORANDUM OF DECISION - 19

*Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 62 (2004).  Given the terms of this loan, the Court concludes Debtors are entitled to the maximum $2,000 statutory penalty.

Finally, Debtors may recover their costs for this action and reasonable attorneys fees.  15 U.S.C. § 1640(a)(3).  In the Court's opinion, Debtors should recover their attorneys fees and costs incurred in connection with objecting to the amount of Creditor's claim.   By the same token, Debtors cannot expect to recover their expenses of litigating with Creditor over other issues, such as the stay relief motion, or issues concerning confirmation of the plan.  No proof of the amount sought by Debtors for attorneys fees and costs was submitted to the Court, so any award must await further proof and proceedings.

> **3.     Debtors are not entitled to an offset or recoupment under the National Flood Insurance Program.**

Debtors argue they are also entitled to a setoff or recoupment against Creditor based upon Creditor's inaccurate determination that Debtors' property was not located in a flood plain absolving them of the need to obtain flood insurance.  However, a clear majority of courts have found that the National Flood Insurance Program, 42 U.S.C. § 4001 *et seq.*, does not provide a private right of action for a violation of its terms.  *See Mid-America Nat'l. Bank of Chicago v. Loan Ass'n of South Holland*, 737 F.2d 638, 640 (7th Cir. 1984); *Hofbauer v. Northwestern Nat'l. Bank of Rochester*, 700 F.2d 1197, 1201 (8th Cir. 1983); *Brill*

MEMORANDUM OF DECISION - 20

*v. Northern Cal. Sav. and Loan Ass'n*, 555 F.Supp. 566 (N.D. Cal. 1982).  The

focus of this statute is providing insurance for structures located in flood zones,

not to create a system for determining where houses may be constructed.  Debtors

failed to show how this statute supports a claim for damages entirely unrelated to

flood insurance.

The Court concludes Debtors are not entitled to recover damages

from Creditor for improper disclosure about the flood insurance requirements.

**4.      Conclusions as to the amount of Creditor's claim.**

Creditor's holds an allowed secured claim in this bankruptcy case.

Debtors did not have the right to rescind the loan since it was a  residential

mortgage transaction.  However, Debtors are entitled to set-off against Creditor's

claim the $2,000 in damages they may recover for Creditor's failure to comply

with federal disclosure laws.  Subtracting this amount from Creditor's amended

proof of claim results in a net claim of $289,965.66.  Additionally, Debtors are

entitled to an offset for their reasonable costs and attorney's fees incurred in

objecting to the amount of Creditor's claim.

**B.  Creditor's Motion to Lift the Automatic Stay is Denied.**

Creditor is entitled to relief from the automatic stay only if it can

establish cause, including lack of adequate protection of its interest.  11 U.S.C. §

MEMORANDUM OF DECISION - 21

362(d)(1).  Creditor may also be entitled to stay relief if it establishes that Debtors have no equity in the property and the property is not necessary for an effective reorganization.  11 U.S.C. § 362(d)(2)(A) and (B).  Creditor bears the burden of proof on the question of Debtors' equity in such property, 11 U.S.C. § 362(d)(2)(A); *In re KRC, Inc.*, 226 B.R. 112, 114 (Bankr. D. Idaho 1998), and Debtors bear the burden of proof on all other issues.  11 U.S.C. § 362(g)(1) and (2); *In re KRC, Inc.*, 226 at 114.

The Court concludes the value of Debtors' property is $300,000. Creditor's claim is, therefore, fully secured.  The record also establishes that Debtors need their home to reorganize.  In addition, Debtors have informed the Court that if the Court concludes, as it has, that they cannot rescind Creditor's mortgage, Debtors will offer and commence adequate protection payments to Creditor.  Therefore, for now, the Court will deny Creditor's motion for relief from the automatic stay pending submission of an offer of adequate protection by Debtors to Creditor, and the filing of an amended Chapter 13 plan.

### C.  Confirmation of Debtors' Plan is Denied.

Given the Court's decision regarding the secured status and amount of  Creditor's claim, confirmation of Debtors' plan must be denied because it fails to properly treat Creditor's secured claim.  11 U.S.C. § 1325(a)(5).  Debtors will

MEMORANDUM OF DECISION - 22

be afforded a brief opportunity to propose an amended plan consistent with this decision.

## Conclusion

Creditor holds a valid claim secured by Debtors' real property, but Debtors are entitled to offsets against the amount due Creditor. Confirmation of Debtors' proposed plan shall be denied. Creditor's motion for stay relief is also denied. Debtors shall file a proposed amended plan within fourteen (14) days of the date of the Court's order, along with Debtors' attorney's affidavit itemizing Debtors' claim for attorneys fees and costs incurred in objecting to Creditor's claim. Debtors shall promptly schedule the amended plan for hearing before the

MEMORANDUM OF DECISION - 23

Court after appropriate notice to interested parties.   Creditor may object to the

amended plan and amount Debtors request for attorney fees and costs if it so

chooses.

    A separate order will be entered.

Dated: March 2, 2006

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 24